UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

───────────────────────────────────────────
                                              )
In re:                                        )    Chapter 7
                                              )
     KIA JANET AIKENS                         )    Case No. 13-12701 (REG)
                                              )
              Debtor.                         )
                                              )
───────────────────────────────────────────

DECISION ON DEBTOR'S MOTION TO DETERMINE
WHETHER THE PROVISIONS OF 11 U.S.C. 362(B)(22)
APPLY[1]

APPEARANCES:

JOAN L. BERANBAUM, ESQ.,
DISTRICT COUNCIL 37 MUNICIPAL EMPLOYEES
LEGAL SERVICE PLAN
*Counsel for the Debtor*
125 Barclay Street
New York, New York 10007
By:    Barbara A. Cass, Esq. (argued)

KELLY D. MACNEAL, ESQ.,
ACTING GENERAL COUNSEL FOR
THE NEW YORK CITY HOUSING AUTHORITY
*Counsel for Landlord*
250 Broadway
New York, New York 10007
By:    Anna S. Fortgang, Esq. (argued)

ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

      Debtor Kia Janet Aikens ("**Ms. Aikens**") is a resident in public housing operated by the

New York City Housing Authority (the "**Housing Authority**").  In July 2013, the Housing

Authority obtained a judgment of possession with respect to her apartment, by reason of Ms.

───────────────────────────

[1]  This written decision memorializes the oral decision that I issued after the close of oral argument.  Because it had its origins in the originally dictated decision, it speaks as of the time that I issued the original oral decision, and has a more conversational tone.

-1-

Aikens' failure to pay her rent. After the judgment was entered, but before she was evicted, Ms. Aikens filed this chapter 7 case, in which she will shortly receive a discharge with respect to her prepetition debt—including the rent she owes to the Housing Authority. But under the BAPCPA amendments to the Bankruptcy Code, discussed below, she might still lose her apartment if she fails to pay discharged prepetition rent. Ms. Aikens seeks to avoid such a result

Under New York law, a tenant can often cure the defaults leading to a judgment of possession in favor of a landlord even after the entry of a judgment of possession—so long as there's not yet been *execution* on a warrant of eviction.[2] And as the 2005 BAPCPA amendments to the Code required, as conditions to continued protection under the automatic stay,[3] Ms. Aikens

---

[2] New York RPAPL § 749(3) provides, in relevant part:

> The issuing of a warrant for the removal of a tenant cancels the agreement under which the person removed held the premises, and annuls the relation of landlord and tenant, *but nothing contained herein shall deprive the court of the power to vacate such warrant for good cause shown prior to the execution thereof.*

N.Y. REAL PROP. ACT. & PROC. L. § 749(3)(McKinney 2013) (Emphasis added). Exercising the power recognized in the italicized second clause of the quoted language, the New York state courts frequently vacate the warrant of eviction, and allow the tenant to remain in possession, when the tenant has cured the defaults before execution of the warrant of eviction. *See, e.g., In re Griggsby*, 404 B.R. 83, 91-92 (Bankr. S.D.N.Y. 2009) (Glenn, J.) ("***Griggsby***") (discussing the New York state law in this area, and its effect on bankruptcy court determinations with respect to the automatic stay).

[3] Section 362(b)(22) of the Code provides, in relevant part, that subject to an exception, of which Ms. Aikens wishes to avail herself here, section 362's automatic stay doesn't apply to:

> the continuation of any eviction . . . proceeding by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease or rental agreement and with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor.

The exception arises under section 362(*l*) (the letter "L" italicized, to distinguish it from the number "1"). It effectively provides for a 30-day temporary stay, notwithstanding section 362(b)(22), if the debtor files with the petition, and serves on the landlord, a certification that:

> (A) under nonbankruptcy law applicable in the jurisdiction, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after that judgment for possession was entered; and
>
> (B) the debtor (or an adult dependent of the debtor) has deposited with the clerk of the court, any rent that would become due during the 30-day period after the filing of the bankruptcy petition.

-2-

executed the certification to that effect and deposited the one month's rent called for under section 362(*l*)(1)(A) of the Code. But she didn't certify that she had cured the entire prepetition monetary default within 30 days of the filing of the petition, as she wished to avail herself of the Code's usual discharge with respect to prepetition debt.

In this contested matter in Ms. Aikens' chapter 7 case, she moves for an order, based on her tenancy in public housing, determining that the provisions of section 362(b)(22) of the Bankruptcy Code are inapplicable in her chapter 7 case, and relieving her from the deposit requirements that would otherwise be imposed under section 362(*l*)(2). Ms. Aikens relies on caselaw, discussed below—including a decision of the Second Circuit,[4] a pre-BAPCPA district court decision holding similarly,[5] and a post-BAPCPA bankruptcy court decision addressing this exact issue[6]—applying section 525(a) of the Code and holding that a governmental unit can't deny a benefit to a debtor solely because that debtor hasn't paid a debt that's dischargeable under the Code. The Housing Authority has appeared in opposition to the motion, making some effort to distinguish the precedent in this area, while candidly acknowledging, to its considerable credit, the strength of the precedent against it on this motion.

Ms. Aikens' motion is granted. For tenants who have the benefit of public housing, section 525(a) of the Bankruptcy Code trumps section 362(b)(22), and the Debtor can't lose her right to continued occupancy of public housing by reason of her failure to pay prepetition debt.

---

Section 362(*l*)(1). Then, if a further certification is filed within that 30-day period advising that there has been a cure of the "the entire monetary default that gave rise to the judgment under which possession is sought by the lessor" (and that certification is undisputed or judicially determined to be true), section 362(b)(22) doesn't apply, and the debtor can continue to take advantage of the usual automatic stay. *See* section 362(*l*)(2).

[4]  *In re Stoltz*, 315 F.3d 80 (2d Cir. 2002) ("**Stoltz**").
[5]  *Curry v. Metro. Dade Cnty.* (*In re Curry*), 148 B.R. 966 (S.D. Fla. 1992) (Aronovitz, J.) ("**Curry**").
[6]  *In re Kelly*, 356 B.R. 899 (Bankr. S.D. Fla. 2006) (Mark, C.J.) ("**Kelly**").

So long as she continues to pay her postpetition debt (as to which the Housing Authority's rights necessarily must be reserved and preserved), she will be protected by the automatic stay.

My Findings of Fact and Conclusions of Law in connection with this decision follow.

### Findings of Fact

The Debtor lives in public housing provided by the New York City Housing Authority, which is a governmental agency. The Debtor-Tenant's eviction commenced on November 16, 2012. The Housing Authority obtained a final judgment of possession on July 3, 2013. The eviction was for nonpayment of rent; there is nothing in the record to indicate that it was for anything else. A warrant of eviction issued August 9, 2013, and a Chapter 7 case was filed by the Debtor on August 19, 2013, about 10 days thereafter, before execution of the warrant.

### Conclusions of Law

Section 525(a) of the Code provides, in relevant part, that with exceptions not relevant here:

> [A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against . . . a person that is or has been a debtor under this title . . . solely because such . . . debtor . . . has not paid a debt that is dischargeable in the case under this title . . . .

In *Stoltz*, the Second Circuit ruled, among other things, that a resident of public housing in Brattleboro, Vermont could not be deprived of her ability to retain her lease with a governmental unit after having her prepetition debt discharged in bankruptcy.[7] The Circuit did so based on section 525(a) of the Code. As it there explained, section 525(a) evolved from the

---

[7]   315 F.3d at 93–95.

Supreme Court's decision in *Perez v. Campbell*,[8] described by the Circuit as "a seminal bankruptcy case,"[9] in which the Supreme Court struck down a state statute that withheld driving privileges from debtors who failed to satisfy motor-vehicle-related tort judgments against them, even if the judgments were discharged under bankruptcy law.[10] The state statute was invalid under the Supremacy Clause, as it discriminated against debtors in a manner that frustrated, and was contrary to, the fresh start principles of the Bankruptcy Act.[11]

And as the Second Circuit explicitly held in *Stoltz,* "section 525(a) protects debtor-tenants like Stoltz from eviction for nonpayment of discharged prepetition rent . . . ."[12] The *Stoltz* court so ruled even though it recognized that section 525(a) was in conflict with section 365 (which as a general matter requires cures of *all* prepetition defaults),[13] since, as the *Stoltz* court observed just a little later in its opinion:

> [S]ection 365 indicates that landlords (in general) may evict debtor-tenants for nonpayment of discharged prepetition rent. Section 525(a), on the other hand, specifically prohibits landlords who are also governmental units from evicting debtor-tenants solely because of nonpayment of discharged prepetition rent.[14]

But the more specific section 525(a)—for the subset of landlords who are also governmental units, and whose providing apartments is a governmental grant—trumped the more general section 365.

---

[8]    402 U.S. 637 (1971) ("***Perez***"). *Perez* was decided under the now-superseded Bankruptcy Act, which lacked a provision dealing with the issue as explicitly as the present Bankruptcy Code, which became effective in 1979.

[9]    315 F.3d at 87.

[10]   *Id.*

[11]   *Id.*

[12]   *Id.* at 92.

[13]   *Id.*

[14]   315 F.3d at 93.

Those same principles apply here. Here, there is the same type of conflict—this time between 525(a) and 362(b)(22). The latter applies to all landlord and tenant relationships, public and nonpublic alike. Like section 365, it too is more general. And as section 525(a) applies to the subset of such relationships that are with governmental units alone, it is the more specific. Just as the *Stoltz* court concluded that 525(a) trumped section 365, section 525(a) does likewise with respect to 362(b)(22)—the latter of which, once again, applies to all landlord-tenant relationships, public and non-public alike.

But any discussion of these issues must include not just the controlling authority in *Stoltz*, but the decisions in *Curry* and, particularly, the post-BAPCPA decision in *Kelly*—the latter of which is both thoroughly reasoned and directly on point.

In *Curry* (a decision under the Code but before the 2005 BAPCPA amendments, and *Stoltz*), District Judge Sidney Aronovitz reversed bankruptcy court decisions that had granted relief from the stay to allow Dade County to evict two public housing tenants.[15] Using analysis effectively identical to that later adopted in *Stoltz*, Judge Aronovitz likewise concluded that the Code's more specific section 525(a) trumped the more general section 365.[16]

And later, in *Kelly*, Chief Judge Mark addressed the exact issue we have here: whether the *Stoltz* and *Curry* analyses likewise applied to section 362(b)(22). Not surprisingly, he ruled that they did.[17] Citing *Stoltz* and *Curry*, Judge Mark ruled that section 525(a) trumped 362(b)(22), and that section 362(b)(22) did not have to be complied with in a case where the tenant was protected by 525(a).[18] As a public housing tenant, the debtor was entitled to remain

---

[15]    *See* 148 B.R. at 968.

[16]    *See id.* at 972.

[17]    *See* 356 B.R. at 901–902.

[18]    *Id.*

in her apartment under 525(a) even if she discharged, rather than cured, her prepetition rent default.[19]

When *Kelly* came down, BAPCPA was newly enacted, and there was as yet no caselaw dealing with the effect of section 525(a) on section 362(b)(22), as contrasted to section 365, and whether the same principles applied. Yet Judge Mark drew the logical conclusion that they did. He held that:

> [Section] 525(a) eliminates the need for a public housing debtor to cure a prepetition default as a condition to rendering the stay exception in § 362(b)(22) inapplicable. This result is consistent with the pre-BAPCPA cases analyzing the cure obligations in § 365(b)(1) in light of § 525(a). Those cases hold that § 525(a) trumps § 365(b)(1). That is, a public housing debtor's right to retain possession under § 525(a) after discharging the prepetition debt controls over the cure obligations in § 365(b)(1).[20]

Judge Mark then continued, importantly:

> If a public housing debtor does not have to cure prepetition defaults under § 365, that same debtor should not be required to cure the defaults under § 362(*l*) in order to stop an eviction. Section 525(a) allows a Chapter 7 debtor to stay in his or her public housing unit even though prepetition rent arrearages are being discharged. This Court holds that the addition of § 362(b)(22) in BAPCPA does not change that result.[21]

Though *Kelly* was decided after a hearing, it appears that the Dade County Housing Authority did not then appear. And unlike *Stoltz*, *Kelly* is not binding on me. Nevertheless, *Kelly* is directly on point, and as I indicated, carefully reasoned. It plainly is correct.

---

[19]    *Id.*

[20]    *Id.* at 901.

[21]    *Id.*

Here the Housing Authority understands and respects the precedent against it, seeking only to distinguish *Kelly* on its facts—arguing that a warrant of eviction may not have issued in *Kelly*, but did here. But that is a distinction without material significance. Under New York's RPAPL § 749(3), quoted above,[22] the tenant still has the right to reinstate the lease, even after issuance of the warrant of eviction, so long as the warrant has not been executed on. And when applied to prepetition defaults, section 362(b)(22) still runs afoul of the principles articulated in *Kelly*, *Curry,* and of course *Stoltz* that the debtor-tenant would be penalized for the nonpayment of prepetition rent. That is permissible for nongovernmental landlords, but not for governmental ones.

Here the necessary cure includes any unpaid postpetition rent, but it cannot cover prepetition rent. *Stoltz, Curry* and *Kelly* make that clear. While any landlord facing a request in housing court for vacatur of a warrant of eviction would understandably want cure of as much of the then-existing defaults as it could, a public authority landlord can lawfully request only the postpetition component. A public authority is constrained by section 525(a).

Finally, but importantly, I must note what I am *not* holding. This ruling applies only to residents of public housing, not tenants generally. It is only because of the applicability of 525(a), *Stoltz*, *Curry* and *Kelly* that I hold as I do. And this is not a get out of jail free card vis-a-vis postpetition rent. All of that must be paid, and if the Debtor does not pay her postpetition rent, she can still be evicted.[23]

---

22    *See* n.2 above.

23    In that respect, I must emphasize what the *Stoltz* court also said:

> Neither *Stoltz*'s discharge nor section 525(a) diminishes her obligation to pay postpetition rent, and the Code expressly prohibits Stoltz from receiving another discharge under bankruptcy for at least six years. In the interim, Stoltz may be evicted if she breaches her lease by postpetition default. Therefore, all of BHA's [the Brattleboro Housing

Thus, for the reasons stated, the Debtor-Tenant's motion is granted, though the order should also provide expressly that this order is without prejudice to any and all rights the Housing Authority will have in the event that postpetition rent is not paid.

Dated: New York, New York          <u>  s/Robert E. Gerber    </u>
       January <u>28</u>, 2014              United States Bankruptcy Judge

---

      Authority's] creditor-interests are protected, regardless of whether Stoltz is evicted or not.

315 F.3d at 94 (citations omitted).